EDWARD P. SAKER, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Saker v. Commissioner
Docket No. 14693-92
United States Tax Court
T.C. Memo 1994-251; 1994 Tax Ct. Memo LEXIS 258; 67 T.C.M. (CCH) 3046; June 6, 1994, Filed *258 Edward P. Saker, pro se. For respondent: Charles A. Baer. CLAPP
CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined a deficiency in and additions to petitioner's 1985 Federal income tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6661
1985
$ 8,576
$ 2,143
$ 429
[1]
$ 2,144
After concessions by both parties, the issues for decision are: (1) Whether petitioner had $ 33,126 in income from trust and escrow account deficits in 1985. We hold that he did. (2) Whether petitioner is liable for an addition to tax under section 6651(a). We hold that he is. (3) Whether petition is liable for additions to tax under section 6653(a)(1) and (2). We hold that he is. (4) Whether petitioner is liable for an addition to tax under section 6661. We hold that he is. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. FINDINGS OF FACT We incorporate by reference the stipulation of facts and *259 attached exhibits. Petitioner resided in Jacksonville, Florida, at the time the petition was filed. Petitioner operated a real estate business, Saker & Associates, as a sole proprietorship during the year in issue. Tina Collins Childress (Childress), worked for petitioner at Saker & Associates from 1984 until October 1985 as a secretary and bookkeeper. At the time she was working for petitioner, Childress was on probation for embezzling from another company and was paying restitution. Saker & Associates maintained trust and escrow accounts which held funds belonging to its customers. In any given month in 1985, Saker & Associates received approximately $ 90,000 in rent from the tenants of rental properties it managed. Approximately one-third of the rent Saker & Associates received was paid in the form of cash. As part of her duties in Saker & Associates' front office, Childress, along with other front office employees, collected these rents. At some time during 1985, petitioner discovered that Childress was embezzling money from Saker & Associates during 1985 to support a cocaine habit. At petitioner's request, Childress took a polygraph test on October 5, 1985, to determine *260 the amount of money she had embezzled from Saker & Associates. During the course of the test, Childress estimated that she stole approximately $ 10,000 in cash. Childress voluntarily signed a statement at the time she took the test admitting that she stole between $ 8,000 and $ 10,000 in cash. In the statement, Childress admitted to signing over to herself and cashing forfeited deposit checks from clients of Saker & Associates. She also increased the amounts appearing on her payroll checks and deposited the checks into her checking account. In exchange for his promise not to prosecute her, Childress paid restitution of $ 8,000 or $ 9,000 to petitioner sometime after 1985. Terri Combs (Combs) worked for petitioner as a secretary and bookkeeper at Saker & Associates from July 1986 to June 1989. Combs reported to Douglas J. Davis (Davis), petitioner's certified public accountant (C.P.A.), that there were discrepancies in the trust and escrow accounts and that petitioner made his own mortgage payments out of these accounts. Davis directed Combs to contact the Florida Real Estate Commission (FREC), which she did in 1989. An investigative report prepared by the FREC's Department *261 of Professional Regulation determined that there was a shortage in Saker & Associates' trust and escrow accounts of $ 114,463 as of June 16, 1989. In an interview with the investigator, petitioner admitted that the accounts were short by at least $ 95,500, and attributed the shortage to Childress' embezzlement in 1985. The investigative report stated that the deficit in the accounts had "consistently increased over the past year". Consequently, a formal complaint alleging petitioner's failure to maintain escrow funds was filed. On June 21, 1989, petitioner voluntarily surrendered his real estate brokerage license for revocation in lieu of further investigation and prosecution of the pending complaint. Petitioner filed a 1985 Federal income tax return prepared by Davis on October 14, 1988. Petitioner deducted $ 43,015 as an embezzlement loss from Saker & Associates' income on the Schedule C. Using the figures taken from Davis' workpapers, a revenue agent auditing petitioner determined that Saker & Associates' trust and escrow accounts were short by $ 43,125.59 for 1985. The revenue agent found that $ 10,000 of this amount was embezzled by Childress, but added back $ 8,000 to *262 reflect the amount ultimately repaid to arrive at a figure of $ 41,125.59 as the net amount taken from trust and escrow accounts for petitioner's personal use. On brief, respondent conceded that the inclusion in petitioner's 1985 income of the $ 8,000 repaid by Childress was erroneous because repayment was not made until a later year. Petitioner had income from deficits in Saker & Associates' trust and escrow accounts of $ 33,126 in 1985. OPINION The first issue for decision is whether petitioner had income from trust and escrow account deficits of $ 33,126 in 1985. Respondent's determinations are presumed correct, and petitioner bears the burden of proving them to be erroneous. Rule 142(a); . It is well settled that embezzled funds are includable in the gross income of the embezzler in the year in which the funds are misappropriated. ; , affg. . The record contains a stipulated FREC investigative *263 report showing shortages in Saker & Associates' trust and escrow accounts during the years 1985-89, which resulted in petitioner's surrender of his real estate broker license. Respondent's determination with respect to the amount of the unexplained shortages in Saker & Associates' trust and escrow accounts in 1985 is derived from the workpapers of Davis, petitioner's C.P.A. Petitioner alleges that Childress embezzled the entire amount of the shortage in the trust and escrow accounts during 1985. However, all of the evidence in the record limits the amount of Childress' theft in 1985 to approximately $ 10,000. Petitioner stipulated to the results of Childress' polygraph examination and her signed statement that she stole $ 10,000 during 1985. Combs testified that petitioner told her that Childress had taken approximately $ 10,000, and that, during 1986-89, she was aware that petitioner repeatedly took cash out of the trust and escrow accounts for his personal use. Petitioner has not offered any argument or evidence to explain the balance of the shortage in 1985. Childress testified that, on occasion, she saw petitioner take cash rents collected from tenants and write receipts *264 to the trust and escrow accounts during 1985. These transactions were never recorded on the books. Petitioner did not deny or rebut Childress and Combs' testimony that he regularly took money from the trust and escrow accounts leaving receipts or "IOUs". Petitioner thus has failed to show that the unexplained shortages in Saker & Associates' trust and escrow accounts were not removed and used for his personal benefit. Childress, despite her less than exemplary record, was a credible witness. (At the time of trial, Childress had been drug-free for 4 years.) Combs was familiar with petitioner's operation and practices and was also a credible witness. Petitioner was not a believable witness. Accordingly, we conclude that petitioner had income in 1985 from deficits in his trust and escrow accounts in the amount of $ 33,126. Respondent determined that petitioner is liable for additions to tax in 1985 under section 6651(a)(1) for failure to file timely his tax return, under section 6653(a)(1) and (2) for negligence or intentional disregard of rules or regulations, and under section 6661(a) for substantial underpayment of income tax. Petitioner did not address the additions to tax *265 at trial or on brief and is, therefore, deemed to concede them. We sustain respondent's determinations under sections 6651(a)(1), 6653(a)(1) and (2), and 6661(a). Decision will be entered under Rule 155. Footnotes
1. Fifty percent of the interest due on $ 8,576.↩